**(87 South. 747)**

**No. 22908.**

## DAVENPORT v. STERLING LUMBER CO.

(Jan. 31, 1921. Rehearing Denied Feb. 28, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Injunction** ⬅➡114(2)—**Suit to enjoin trespass must be maintained by party in possession.**

A suit to enjoin a trespass on land and to recover the damages flowing therefrom must be maintained by the person who had the possession, actual or constructive, of the property at the time of the injury.

2. **Vendor and purchaser** ⬅➡244 — **Evidence held to show notice to purchaser of lands of title of grantee of timber.**

Evidence *held* to show that a purchaser of timber lands bought with full notice of the title of one owning the timber under a deed from a former owner of the land and with notice that defendant was in possession and that he was buying a lawsuit.

3. **Logs and logging** ⬅➡2 — **Indefiniteness of timber deed cannot be attacked by grantee of land not having antagonistic title.**

Where plaintiff purchased timber lands with full knowledge of a conveyance of the timber by a former owner, he was not setting up an antagonistic title, and could not attack the timber deeds as too indefinite to transfer the property.

4. **Logs and logging** ⬅➡2—**Description of timber sufficient when it permitted identification of property.**

The description in timber deeds was sufficient where it was sufficient to enable the parties and witnesses to identify the property.

O'Niell, J., dissenting.

Appeal from Sixth Judicial District Court, Parish of Morehouse; Ben C. Dawkins, Judge.

Action by J. A. Davenport against the Sterling Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

H. Flood Madison, of Bastrop, for appellant.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellee.

SOMMERVILLE, J. This is an action for trespass wherein the plaintiff fails to allege in his petition possession of the thing trespassed upon. Indeed, he alleges possession in the defendant. He claims ownership of certain lands, but he does not claim specifically ownership of the timber standing thereon and which belongs to the defendant in the cause. He alleges that defendant has trespassed on the land and felled part of the timber and asks for an injunction to prevent further trespass and for damages. The prayer of his petition is:

"That a writ of injunction do issue enjoining, restraining, and prohibiting said Sterling Lumber Company and its agents and employees from trespassing on said above-described lands, and especially from cutting or removing any of the timber thereon, that the said Sterling Lumber Company be served with writ of injunction, and that said company be duly served with a copy of this petition and cited to answer same, and on final trial had for judgment perpetuating said injunction, and also for judgment against said defendant for the full sum of $4,770, with legal interest thereon from judicial demand and all costs of this suit, prays for other needful orders and decrees in the premises, and for general relief."

[1] This is simply a suit to enjoin a trespass alleged to have been made by the defendant and for damages flowing therefrom. It follows that the person to maintain the action is the person who had possession, actual or constructive, of the property at the time of the injury. The fundamental doctrines of the law of trespass that possession is the gist of the action, that the plaintiff must have possession, that possession alone is sufficient to maintain the action, that title is not sufficient where the property is adversely held by another, and, finally, that to maintain the action no right not a right in rem to the property rather than merely a right in personam against another to get the property will support the action, all rest on this basic idea. 38 Cyc. 1004.

An exception of no cause of right of action was filed in the suit, but it does not appear to have been pressed. The minutes of the court show that it was referred to the merits of the case on the same day that it was filed. It was not disposed of in any way. Defendant also filed on that same day an answer in which it set up title as owner of the timber in question, and recited its chain of title; but it did not ask that it be declared to be the owner of the timber, and it did not ask for any affirmative relief whatever. It prayed:

"That plaintiff's demands be rejected in toto at his cost, and that he be condemned to pay damages in the sum of $350 for counsel fees incurred in the defense of this suit, and in the sum of $4,000 for the hindrance and delays caused by the injunction sued out herein in cutting and removing said timber."

Yet on the trial the district judge ruled that the defendant had in and by his answer converted the action into a petitory action, and further held that the description under which defendant claims title was insufficient to identify the property with clearness and certainty, and gave judgment in favor of plaintiff as prayed for.

Defendant has appealed, and plaintiff has answered, asking for an amendment of the judgment by increasing the amount of damages awarded.

[2] The evidence shows that both plaintiff and defendant claimed from two common authors, one by the name of Willis Johnson, and one by the name of S. H. Hayden. These parties sold the timber to the Bastrop Lumber Company on January 30, 1904, and February 4, 1904, respectively, with the property fully described in the acts of sale. These acts of sale were recorded at the time, and thus notice was given to the world that Johnson and Hayden were no longer owners of the timber. Subsequently Johnson and Hayden sold the lands to Robinson, and Robinson sold to Odom, and Odom to the plaintiff. All of these parties bought with full notice that the timber belonged to the Bastrop Lumber Company and its successors in title.

Plaintiff admitted on the witness stand that he knew of the difficulty in the title when he bought from Odom. He testified in part as follows:

"Q. Mr. Davenport, state the conversation between you and Mr. Odom at the time you purchased this timber and the land on which it stands from him that led up to the warranty clause in this deed to you reading as follows: 'It is agreed and understood that the vendor warrants the title to the said property to the extent of the purchase price only, and that in case the purchaser or his heirs or assigns should be evicted from the land by any process whatever the vendor shall return to him only the amount of the purchase price set out herein, with 8 per cent. interest thereon from the date to the date of eviction.' A. As near as I recall, I stated to him that I was familiar with this contract or deed of timber sold from Mr. Hayden and Willis Johnson on this property, and that the price was full, and that we were selling some up there—timber—and needed that to go along with it to make our proposition attractive, and I would pay him that price only with a warranty which was a full price, and that there was not room enough for a lawsuit. * * * Q. You are not paying the counsel fees? A. No, sir. * * * Q. In any event

you had at that time an impression that it would take a lawsuit to determine the title to this timber? A. That it might take a lawsuit. * * * Q. And the state of your mind resulted from your knowledge of the contracts or the deeds which Willis Johnson and S. H. Hayden had made to this Bastrop Lumber Company? A. Yes, sir. It was the only thing I had any knowledge of that could possibly give us trouble."

And in line with this testimony Judge Odom, the vendor of plaintiff, testified as follows:

"Q. Mr. Odom, in the deed by which you conveyed the timber in controversy to Mr. Davenport there is in my apprehension a rather unusual stipulation or warranty. What conversation took place between you and Mr. Davenport that resulted in inserting that stipulation in the deed? A. That is not an unusual stipulation to put in a deed. I could tell Mr. Davenport that I would warrant the title to the extent of the purchase price, and in order to fix liability and save argument or a lawsuit over the matter that I would put in there, as I usually did, that liability in case of contention was to be the purchase price with 8 per cent. on his money. That was at my suggestion that it should be done, and it was my custom to put such stipulations in these deeds. It is not an unusual stipulation at all, as I understand it. * * * Q. You employed the counsel that is prosecuting this case? A. Yes. * * * Q. Didn't you do that under an arrangement between you and Mr. Davenport at the time you sold him this timber that you would bear the expense of the litigation in case litigation resulted in regard to the timber? A. Yes, sir; and I will explain by saying that Mr. Davenport and I had that understanding at the time he purchased the timber. Mr. Davenport thought he was paying quite a large price for this property, and said at the time that he would not want to pay just such a price for this property and still have to have a lawsuit. I told him that I would pay either to defend the lawsuit personally as attorney in the case if it should develop that a lawsuit was necessary or else I would pay the fees of any attorney if it was necessary to defend or to prosecute a suit; that I had every faith in my title, but that I would see that he didn't suffer. * * * Q. Then it is a matter of fact and your understanding that the asserting of title by the Sterling Lumber Company was discussed between you and Mr. Davenport and that as a result of this discussion you made the agree-

ment about which you have testified? A. Yes, sir. Q. Mr. Odom, is it not a fact that when you purchased this land from Mr. L. G. Robinson that he stated to you that the moving cause of his selling the timber and the land at such a nominal price was his apprehension of the title of the Sterling Lumber Company to the timber and the litigation that would likely ensue because of that title? A. He was— he didn't say that it was his apprehension of the litigation, except that he didn't want a lawsuit and he apprehended that probably there would be a lawsuit and if there was he didn't want to have it. * * * Q. Didn't he state to you that he had inquired and ascertained that it would probably cost him $500 to litigate the matter with the Sterling Lumber Company, and that he would rather sell the property at a low price than to pay and to be involved in that lawsuit? A. He did—he said that he just didn't want a lawsuit, and especially in case anything should happen to him that he didn't want his wife to be up there— he wanted to sell out. * * * Q. Now, Mr. Odom, you testified that the clause which you inserted in your deed to Mr. Davenport, limited warranty clause, was not an uncommon clause. I quote from the deed of Mr. Robinson to you as follows: 'It is especially agreed and understood that this sale is made as a quitclaim and without any warranty whatsoever, and that, should the purchaser ever be evicted from the said land by judicial process or otherwise, the purchaser, his heirs or assigns shall never have any action or recourse upon the vendor or his heirs or assigns for the restitution of the purchase price herewith or in any other sum whatsoever, the purchaser especially declaring that he is familiar with the title to this land, and that he takes especial cognizance of this clause with reference to the warranty.' Now, it is not your custom to purchase lands containing any nonwarranty clause like that, is it? A. Yes, sir; from people who own warranty titles and where a man is satisfied with the title; and I will say that you will find a number of deeds on the records from where I have purchased—De Land Lumber Company—and that warranty had a clause at least similar to this one in their deeds; and I am not positive about that, but I am almost sure that you will find deeds in the record there from people to me with a quitclaim clause inserted similar to this one."    . . .

So that it is clear that plaintiff bought with full notice of the title in defendant, that defendant was in actual possession and

had been for many years, and that he (plaintiff) had bought a lawsuit. There is no equity whatever in his claim. He does not ask to be declared to be the owner of the timber; and the evidence shows that he acquired the property with the full knowledge that the ownership of the timber was in the defendant.

[3, 4] The trial judge was of the opinion that the title deeds of defendant were too indefinite to transfer the property. The plaintiff has nothing whatever to do with the title of the defendant, inasmuch as he is not setting up an antagonistic title. That title was sufficient for this plaintiff and this defendant and the witnesses in this cause to identify the property; and that is description enough.

Defendant's claim for damages and for attorney's fees have not been proved with sufficient certainty, and they will not be allowed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed, and that there now be judgment in favor of defendant dissolving the injunction issued herein and for costs.

O'NIELL, J., dissents.

DAWKINS, J., recused.

PROVOSTY, J., concurs in decree only.